Dear Representatives Lamb
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
May monies of the Teachers' Retirement System of Oklahomalawfully be used to pay insurance premiums for educationemployees, as required under the terms of the Education EmployeesGroup Health, Dental, and Life Insurance Act?
¶ 1 Under the provisions of Article V, Section 62 of the Oklahoma Constitution, the Legislature is specifically authorized to "enact laws to provide for the retirement for meritorious service of teachers and other employees in the public schools, colleges and universities" in Oklahoma, and further, to provide for the payment of such retirement benefits from public funds. Acting pursuant to this constitutional grant, the Legislature, through the years, has adopted statutory provisions establishing a retirement program for teachers, the current version of which appears at 70 O.S. 17-102 (1981) and 70 O.S. 17-106 (1987).
¶ 2 As part of this program, the Legislature has mandated the establishment of a number of special funds to be used for various purposes attendant to operating the System. Under the terms of70 O.S. 17-108 (1981), there is established a series of nine separate and distinct funds, to-wit:
1. Teachers' Savings Fund;
2. Retirement Benefit Fund;
3. Interest Fund;
4. Permanent Retirement Fund;
5. Expense Fund;
6. Suspense Fund;
7. Reserve for Investment Fluctuations Fund;
8. Teachers' Deposit Fund; and
9. Membership Annuity Reserve Fund.
¶ 3 Each of these statutory funds has distinct, although interrelated, purposes, the objects of which are set forth in detail in section 70 O.S. 17-108. Additionally, in 1986, the Legislature also established a new "Teachers' Retirement Reserve Fund" in the State Treasury, which consists of such monies as the Legislature may transfer to the fund for use in supporting or benefiting public pension programs, and which funds may be paid out as provided for by the Legislature. 70 O.S. 17-116.6
(1987).
¶ 4 Prior to 1986, the Board of Trustees was authorized by the Legislature to provide for a retirement program that encompassed a number of different types of benefits to members of the System. Without going into great detail, these benefits include provisions calling for the payment of monthly retirement benefits based upon the member's years of service and contributions paid into the System, disability retirement allowances, death benefits and a number of annuity options that tied into some of the other programs offered. See, 70 O.S. 17-105 (1987).
¶ 5 In 1986, the Legislature also authorized a state-sponsored group health, dental and life insurance program for members of the System by its adoption of the Education Employees Group Health, Dental, and Life Insurance Act. See, Okla. Sess. Laws 1986, c. 131, p. 326. This Act, codified now at 70 O.S. 25-101
(1987) et seq., became operative on July 1, 1987, and is also overseen by the Board of Trustees of the Teachers' Retirement System. 70 O.S. 25-101, 70 O.S. 25-103 (1987). Coverage under the Act does not become effective until July 1, 1988. Under the Act, participating entities in the System may elect to participate in this new program at their option until July 1, 1991, at which point participation therein becomes mandatory. 70O.S. 25-106 (1987).
¶ 6 By the language of 70 O.S. 25-106 of the Act, all employees of a participating entity in this program "shall" participate in the various programs provided for by the Act. Provisions also exist for the coverage of the dependents of such education employees. 70 O.S. 25-107 (1987).
¶ 7 Under the Act's terms, this program is essentially funded by a requirement that premiums be paid into the System for each participating employee. Title 70 O.S. 25-108 (1987) provides, in this regard, in pertinent part:
 A. The premium for each employee of a participating entity shall be paid as follows:
 1. one-third (1/3) of the premium shall be paid by the Teachers' Retirement System of Oklahoma;
 2. one-third (1/3) of the premium shall be paid by the participating entity; and
 3. one-third (1/3) of the premium shall be paid by the employee, except that the participating entity may pay the employee's portion of the premium.
¶ 8 Such monies are required to be deposited in a special "Education Employees Group Health, Dental, and Life Insurance Reserve Fund" established in the State Treasury. 70 O.S. 25-115
(1987). A separate revolving fund has also been provided to pay for the administration of this program, which fund shall consist of monies transferred to it from the Reserve Fund by the Board.70 O.S. 25-116 (1987).
¶ 9 Your question asks of the validity of the statutory requirement that the System, itself, help fund this program. Implicit in your query is a concern that the Teachers' Retirement program, prior to this latest promulgation, was really intended merely to provide retirement benefits to education employees in the State, and that the new funding requirements somehow invalidly impinge upon the sanctity of that retirement program.
¶ 10 It is clear in this State that the Legislature has complete authority to address all areas of rightful concern to the citizens of the State, subject only to specific constraints imposed upon it by the Constitutions of the United States or the State of Oklahoma. Draper v. State Board of Equalization,414 P.2d 276, 279-80 (Okla. 1966). Only where such constitutional limits restrict legislative prerogatives is that body forbidden to act, and such limits will be narrowly construed, with any doubts as to the validity of a legislative statement resolved in favor of constitutional validity. Tate v. Logan, 362 P.2d 670
(Okla. 1961).
¶ 11 It cannot be said, utilizing these well known and time honored rules of construction, that the legislative authorization for payment of a portion of the premiums required for support of this new insurance program from funds of the Teachers' Retirement System is facially infirm. Accordingly, it must be advised that the terms of the Act in this regard are, on their face, valid. However, as a caveat, it must also be noted that the Oklahoma Constitution provides that no law shall ever be passed which would impair vested contractual rights. Okla. Const. Article II, Section 15. It is theoretically possible for the Legislature to pass laws which, in fact, might be found to impermissibly infringe upon such rights. To the extent such an impairment of contract could be proven to exist in any situation, including the impairment of vested rights public employees might have to a certain level of retirement benefits, such a law would be constitutionally invalid. Baker v. Oklahoma Firefighters Pensionand Retirement System, 718 P.2d 348 (Okla. 1986). However, any such determination is a factual one dependent upon the circumstances that might be present in any given situation and cannot be reviewed by the Attorney General in an Opinion.
¶ 12 It is, therefore, the official opinion of the AttorneyGeneral that monies of the Teachers' Retirement System may bevalidly used to pay insurance premiums for education employees ofthe state, as required under 70 O.S. 25-108 (1987) of the Education Employees Group Health, Dental, and Life Insurance Act,70 O.S. 25-101 (1987) et seq., so long as such funding doesnot impermissibly impair the vested contractual rights of membersof the Teachers' Retirement System to benefits under that Systemthat have already been guaranteed to them. Any such determinationis a factual one that must be resolved on a case-by-case basis,after a review of the actual circumstances that might be presentin any given case and cannot be resolved by an Opinion of theAttorney General.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN ASSISTANT ATTORNEY GENERAL